We are here this afternoon with Judge Ripple and with Judge Rovner to hear arguments in the case of Bryant v. Compass Group U.S.A., No. 21443. I will call first, assuming you are on the line, on Mr. Wiley. Are you with us, Mr. Wiley?  Yes, good. I am, Your Honor. I am with you and I am with you. I'm here to hear arguments in the case of Judge Ropner v. Compass Group U.S.A., Inc. This appeal presents a straightforward, limited question. Does the plaintiff allege that she suffered a concrete and particularized injury by pleading that the defendant did not provide her with statutorily required information at the time that biometric information allegedly was gathered? Based on this court's prior precedent, the answer is yes. Alleged violations of the Illinois Biometric Information Privacy Act are sufficient to confer standing in federal court. In Groshek, this court weighed out the test used to determine if a statutory violation confers standing. Standing is found if a statutory violation presents an appreciable risk of harm to the underlying concrete interest that the legislature sought to protect by enacting the statute. Could I ask you, Mr. Wiley? Oh, go ahead, Judge Ropner. Oh, thank you. Yes, I take it that Ms. Bryant implicitly did consent to the scanning of her fingerprint so that she could use the vending machine for employees in the cafeteria. Now, her consent may not have been as informed as the Illinois legislature intended it to be, and it may not have been in writing. But nevertheless, she freely gave it, it would seem. And if so, how was she harmed in any concrete sense? Yes, Your Honor. In order to answer that question, I think we need to look to the Illinois Supreme Court's ruling in Rosenbach. In that case, the Illinois Supreme Court determined that the Illinois legislature created a legal interest in an individual's, quote, privacy in and control over, end quote, one's biometric information. The Illinois Supreme Court further held, quote, the act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent, close quote. Because plaintiff alleges that she gave consent without having received the statutorily required information, that in and of itself is the concrete harm to the interest that the Illinois legislature protected in enacting the statute. Mr. Wiley, this is Judge Wood. I had a couple of thoughts about that. One, it seems that certainly the Illinois legislature was trying to achieve informed consent, but it's beginning to sound as though this is a procedural injury of the type that Spokio doesn't recognize. But the other point I would just throw in is that Illinois itself does not follow standing rules that are as strict as those established in Article III, and that's clearly Illinois's own choice. So just because this case could go forward in an Illinois court doesn't necessarily mean it could go forward in a federal court. We agree, Your Honor. The standing question is analyzed differently in Illinois state courts, and simply because the Illinois Supreme Court found that there was standing in that state court, that particular ruling is not binding on this court. However, the Illinois Supreme Court's interpretation of the statute respectfully is binding on the court. And under the Groshek analysis, the first step is to determine what is the interest at issue. I've already laid out that point. And then the second question is whether there is an appreciable risk of harm to that interest. And here, the plaintiff directly alleged loss of control of her biometric information. To the point as to whether this is a procedural or a substantive violation, we think this is at least as substantive as the failure to disclose that was held to be actionable in the Robertson case, and we've briefed that extensively. In that case, there was a failure to provide information that could have been used in contesting an adverse employment decision based on information governed by the Fair Credit Reporting Act. Similarly here, as the Illinois Supreme Court has noted, individuals in Illinois now have the right to control their information and giving them the power to say no by withholding consent after the provision of information. In other words, in both Robertson and in this case, the harm is failing to provide information that might inform a plaintiff's subsequent decision whether to act or not act. So you're attributing a substantive dimension to this disclosure as opposed to what was at issue in Casillas, which is the other case I would like you to discuss where the difference was more formal. Yes, Your Honor. In Casillas, there was a much narrower, much less material and in fact immaterial failure to file the statute. In that case, there was a failure to indicate that written notice was required, the notice that was given provided that notice could be provided. This court found that to be a mere procedural violation because in that case, it was held not to infringe on the articulated interest in Congress enacting the Fair Debt Collection Practices Act, which was to prevent false or misleading information to be provided to debtors. In that case, because the information provided was not false or misleading, it did not impact the articulated interest under the statute and therefore standing was found lacking. Again, in our case... Forgive me, this is Judge Rovner. Do you think the big difference there would be that she complained in Casillas, she complained only that her notice was missing some information that she didn't suggest that she would ever have used so that, as the court said, the risk of harm was entirely counterfactual because she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them. I think that's the big difference. I would point the court back to Robertson in which this court specifically noted that standing did not depend on whether the plaintiff alleged that she would in fact have acted in reliance on the information. The violation was completed and the harm was suffered when she was denied the choice, whatever that choice might have been. I will remind you, Mr. Wiley, that you're approaching the two-minute mark and you had indicated you wanted to save some rebuttal time. Yes, Your Honor. Before that, might I just ask one very quick question? Certainly, of course. Although your brief says the compass is not conceding that Ms. Bryant suffered any injury whatsoever, at times the case you make for Article III standing stands as though you are admitting she suffered a concrete injury. Of course, I understand we're only at the pleading stage, but if you're comfortable explaining, what do you anticipate Compton's defense liability might be? Yes, Your Honor. There are several. I think it's premature at this point to go into the factual defenses that we may have, but I will note that it's not inconsistent to say that the allegations of the complaint are sufficient to confer standing, even if the plaintiff ultimately cannot prove that those allegations are, in fact, true or that they lead to liability on the part of Compass Group. Okay. Thank you. Thank you, Mr. Wiley. Thank you. Okay. We will now hear then from Mr. Flowery for Ms. Bryant. Yes, Your Honor. Good afternoon. May it please the Court. This is Zach Flowery, Counsel for Plaintiff Appali Christine Bryant. Bryant values one thing as much as anything else in this litigation, certainty. Compass Group created uncertainty by removing this case to federal court. That uncertainty arose from a district court consensus that plaintiffs like Bryant lack Article III standing to pursue claims for violation of the Biometric Information Privacy Act. Bryant was not willing to litigate or attempt to settle her case in federal court and risk the result being vacated later for lack of Article III standing. That's why Bryant moved to remand, not aware of any other way that Bryant could obtain certainty about which forum would ultimately resolve her claims other than moving to remand. So can I ask you, Mr. Flowery? Yes. Mr. Flowery, this is Judge Wood. I understand you've indicated this in your brief that you don't want to have a pointless exercise only to find out that Article III is a problem at the end. But let's look at the merits, and I want to ask you why, if she was perfectly aware that she was giving them her fingerprints and she was perfectly aware that she was somehow linking those fingerprints to a payment method for the convenience of using these vending machines. Why isn't any remaining harm something that looks more like the Casillas situation? She doesn't actually give informed, written consent about the Illinois Biometric Information Privacy Act, but she knows they've captured her fingerprints. The system wouldn't work if they hadn't. And it's unclear what she would have done with the retention and destruction schedules. Your Honor, one of the required disclosures that COMPAS should have made before it collected Bryant's biometric data was telling her how long it would keep her data. And if COMPAS had told her, we're going to collect this data, we're going to keep it permanently, that could have influenced her decision of whether to place her fingerprint on that biometric terminal scanner. Likewise, if COMPAS had said, we're going to keep your data as long as you work at this business and use this cafeteria, that could have influenced her decision. And in Rosenbach, the Illinois Supreme Court did describe the Biometric Act protections as procedural protections, and that those procedural protections define the contours of the privacy rights that the statute created. And so it may be true that if you place your fingerprint on a scanner, you understand why you're doing it, you understand the purpose of the collection, which is one of the written disclosures under the Act, but it may not follow that you understand how long the collector is going to keep their information and what they're going to do with it. So let me also ask this. Thinking of Casillas, let me just quickly get this one question in. To what extent are you relying on the fact that in this case we're talking about her information, you know, something personal and private to her, the fingerprint, whatever, whereas in Casillas it was really more an informational disclosure? Are you going down the line that Justice Thomas did about, you know, analogies to trespass where, you know, it's your property and you're able to tell people not to come on it even if you don't have a particularly serious reason not to want them there? Yes, Your Honor. While this was not a position that either of the parties briefed, the Amica Curiae brief of Mary Crumpton did analogize to the common law privacy claims that are satisfied Article III and argued consistent with the Patel versus Facebook decision out of the Ninth Circuit that the biometric act claims are analogous to common law privacy claims and really the only difference is that the legislature with this act elevated biometric data to a protectable interest. And so, you know, I do think that is a potential basis for standing, but it's not one that Compass Group argued below. And so since we understand that Compass Group has the ultimate burden to establish Article III standing as the party invoking federal jurisdiction, Bryant didn't take a position, an ultimate position on whether, you know, that basis for jurisdiction is adequate, although I do think it's a potential basis for sure. And I think one potential distinction from Casillas that Compass Group doesn't necessarily draw out is that the disclosure there was a legal requirement that you dispute the debt in writing, whereas the disclosure under the biometric act, part of it is factual. How long will you keep the biometric data that you collect? So I think there's a potential distinction between Robertson and Casillas on whether it's a factual or purely legal disclosure. This is Judge Rovner. At bottom, isn't what the statute requires by way of the notice and written consent provisions an opportunity for informed reflection before an individual surrenders her biometric data? And isn't that opportunity gone forever once the individual provides a private entity with her data? Yes, Your Honor. I do agree that part of the purpose of the statute is to allow informed reflection on whether to provide that data to another. I think making the disclosures be in writing aids in that deliberative process that a consumer or a person who gets something in writing thinks about it, decides whether to sign their name, may give that a little more weight when they decide to consent rather than just someone saying, hey, put your finger on the scanner. And then they do it, and they say, therefore, you consented. And then as far as being able to continually deliberate forever, I think once Ms. Bryant no longer worked at this company and can't use the company cafeteria anymore with Compass Group's vending machines and the technology there, I don't really know what recourse she had other than I guess she could have asked nicely to delete my data, but she also could assert her legal rights under this law and try and seek damages and an injunction to get Compass Group to delete her biometric data. Do you think the Illinois legislature could have said anything more than it did in order to make this a concrete injury for purposes of Article III, or is this type of statutory violation by its nature too ethereal to qualify as a concrete injury? So I don't think, Your Honor, that the legislature could have done more. They potentially could have done less. I mean, if they had limited the private right of action to someone who had suffered actual damages, then I think claims under the statute would certainly satisfy Article III in that regard, like if only someone whose biometrics were stolen and they suffered some loss could pursue a claim, then that would satisfy Article III standing. But the legislature intentionally chose not to do that. And in Rosenbach, the Illinois Supreme Court said that the strategy of the act was in part to protect a person's privacy interests and their data before it's ever compromised in the first place. And in part, I think the law is a prophylactic statute. And I think there is some difficulty at times under Article III dealing with these kind of prophylactic statutes. In Gubala, the case under the Cable Act, a consumer said that Time Warner violated the person's personal data for eight years after he canceled his cable television subscription. And, you know, the act clearly envisioned deleting that data so that it's not available to be stolen. But this circuit said that there was no Article III standing there because just because an entity possessed the data didn't mean that anyone would ever access it inappropriately. And so, you know, it seems like in a way the Article III standing doctrine has a way of being a prophylactic statute. To what extent do we have a failure to plead here? And what I'm specifically thinking of is the lack of information in the complaint indicating what, if anything, Bryant would have done differently if COMPASS had complied perfectly with everything under 15 A and B of the statute. So, Your Honor, at least in state court, Ms. Bryant didn't need to plead what she would have done differently. And it's true that if she had pled here that she would not have provided her biometric data if COMPASS Group had made the required written disclosures that may have changed the Article III standing analysis. But that's not in her complaint. And so, you know, in the briefing, Bryant pointed out that COMPASS Group largely just relied on theories of standing and conclusions about standing without analyzing the particular allegations of the complaint. I don't think that Bryant can be faulted for not pleading more detail if it's not required under Illinois law, which is the only place she could have filed this lawsuit. And the private cause of action gave her the right to pursue a claim in Illinois state court, arguably not in federal court. It only authorizes a federal court lawsuit if it's a supplemental claim. So, I don't think that... I mean, of course, that's what the Illinois legislature can say. Clearly, there's 1332 and, in particular, CAFA 1332D. You are at the end of your time, if you would like to wrap up. So, thank you, Your Honor. Because under Collier v. SP Plus, citing Lujan, the removing party, COMPASS Group, has the burden to establish Article III standing, and we don't believe that COMPASS Group has done that. We ask this court to either affirm or adopt a clear rule that parties in the future can look to to know whether they have these kind of claims have Article III standing. Thank you. Thank you very much. Mr. Wiley, you were down to the last 45 seconds, but I'll give you your full two minutes. Thank you, Your Honor. I think I only have a few limited points. The first point is that plaintiff, in fact, alleged specifically that she did lose control over her biometric information. Given that that is the interest that the Illinois Supreme Court defined and the Illinois legislature sought to protect, that is a concrete and particularized harm to the legislative interest. With respect to the last point, as to whether there's a lack of pleading, what the plaintiff would have done, again, we point the court back to its prior decision in Robertson, in which the court was very clear that that allegation is immaterial and that the real question is whether there's a loss of opportunity, not whether the plaintiff would have taken a different course of conduct if given the opportunity. So do you see Casillas as a case where the plaintiff just pleaded herself out of court then? I mean, because in Casillas, she basically says none of this would have made any difference. So if you go so far as to say that, then is that a problem? I certainly don't think that that helped her case. But in Casillas, the real question was what injury had she suffered to the legislatively defined interest? And the court ultimately held, regardless of whether she would have acted differently, that there was no false or misleading information provided and therefore no infringement on the statutory interest. Finally, with respect to the common law privacy interest, we agree with Amicus's brief on this point. But we also point out that there is not only a privacy interest defined and protected in the Illinois statute, there's also the informational and informed consent interest that's protected as well. All right. Thank you very much, Mr. Wiley. That will be it. And thanks as well to Mr. Flowery. The court will take the case under advisement and we will be in recess.